The Honorable Alfred J. Lane State Representative, 25th District State Capitol, Room 115-S Topeka, Kansas 66612-1504
Dear Representative Lane:
You request our opinion on the constitutionality of setting the State minimum wage at an amount provided by Section 6 of the Federal Fair Labor Standards Act.[1] You enclose 2001 House Bill No. 2130 (HB 2130), which would amend the minimum wage law for Kansas.[2] HB 2130 states in pertinent part as follows:
 "On and after July 1, 2001, such minimum wage shall be an amount per hour equal to the amount provided by section 6 of the fair labor standards act and amendments thereto. The secretary shall continuously monitor changes in the wages specified in the fair labor standards act and shall notify Kansas employers of changes thereto. . . ."[3]
Under Article 2, Section 1 of the Constitution of the State of Kansas, the legislative power of this State is vested in a house of representatives and senate. "Legislative power is the power to make, amend, or repeal laws." [4] Because the Kansas Constitution reserves legislative power for the Kansas Legislature, an unlawful delegation of legislative power is contrary to the public policy expressed in the Constitution.[5] In discussing this provision, the Kansas Supreme Court has stated:
 "Article 2, § 1 expresses the fundamental concept that we are to be governed by our duly elected representatives. It is the foundation upon which our democratic form of government is built."[6]
HB 2130 delegates to the Congress of the United States the legislative authority to determine the minimum wage for Kansas. Although Congress is a governmental body comprised of elected representatives of all of the states, the Kansas Supreme Court has held that such delegation is impermissible under the Kansas Constitution. In City of Pittsburg v.Robb,[7] the Court considered whether a statute that provided that it would become ineffective upon the expiration of the National Recovery Act was an unconstitutional delegation of legislative power to Congress. In its discussion, the Court explained:
 "The doctrine that the legislature may not delegate its power of lawmaking originated with John Locke. (Second Treatise on Civil Government, ch. 11.) The constitution of this state was framed in accordance with the doctrine . . . . The question in a given case is, Was what the legislature did a delegation of its lawmaking power?
 "Effectiveness of a statute may be made to depend on occurrence of some fact, event or contingency. In such cases the act must be complete in itself as an expression of the legislative will, and must itself determine propriety and expediency of the measure. These requirements being satisfied, a statute may provide that its operation shall be conditional."[8]
Applying these standards, the Court concluded that the Legislature did not delegate to Congress the power to legislate for the State, but rather the Legislature determined that the termination of its legislation would be conditioned upon the expiration of a federal law. Conditioning the law's operation on an action by Congress was not an unconstitutional delegation of legislative power because the Legislature, rather than Congress, determined the substance of the legislation.
A similar issue was before the Court in State v. Dumler.[9] The defendant asserted that in enacting the 55 miles per hour speed limit, the Kansas Legislature unlawfully delegated its lawmaking authority to the Congress of the United States. The statute passed by the Legislature fixing the maximum speed limit of 55 miles per hour allowed the speed limit to be altered by the state highway commission or local authorities upon the happening of a contingency, that being when Congress changed the speed limit required for a state to qualify for federal funds for highway purposes. The Court said:
 "The defendant is correct in his general statement of the law that legislative power to make a law cannot be delegated by the Kansas legislature to the Congress of the United States. It is equally true, however, that the legislature may make a law to become operative on the happening of a certain contingency or future event."[10]
The Court upheld the statute and explained:
 "[I]t is clear that the Kansas legislature has by no means totally yielded to the Congress its authority to establish maximum speed limits in Kansas. . . . Should Congress prescribe a different maximum speed limit for a state to qualify for federal highway funds, such action does not per se establish a new maximum speed limit in Kansas. When Congressional action occurs, it is the state highway commission (secretary of transportation) acting pursuant to statute who has the authority to establish the maximum speed limits of this state. Here the legislature, rather than delegating legislative power to the Congress, has simply enacted a law to become operational on the happening of a certain contingency or future event."[11]
In Robb and Dumler, the Court found that the Legislature determined the substance of the legislation, and therefore, making the operation of the statutes contingent upon the action of Congress did not constitute an unlawful delegation of legislative power. HB 2130 is distinguishable from those statutes because it does not express the will of the Legislature, but instead delegates to the Congress the exercise of judgment to determine the policy of the State of Kansas. It sets the minimum wage for Kansas at whatever the Congress determines that amount should be in the Fair Labor Standards Act. Any change in that amount by the Congress wouldper se establish a new minimum wage in Kansas. In HB 2130, the Kansas Legislature yields its legislative authority to establish a minimum wage for Kansas to the Congress of the United States. That exercise of judgment is reserved to the Legislature and cannot be delegated to Congress. It is our opinion that setting the Kansas minimum wage at an amount provided in the Fair Labor Standards Act as proposed in HB 2130 constitutes an unlawful delegation of legislative authority to the Congress of the United States and is constitutionally impermissible under Article 2, Section 1 of the Constitution of the State of Kansas.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Donna M. Voth Assistant Attorney General
CJS:JLM:DMV:jm
[1] 29 U.S.C. § 201 et seq.
[2] K.S.A. 44-1203.
[3] 2001 HB 2130, § 1.
[4] State ex rel. Tomasic v. Unified Government of WyandotteCounty/Kansas City, Kan., 264 Kan. 293, 301 (1998).
[5] Gumbhir v. Kansas State Bd. of Pharmacy, 228 Kan. 579, Syl ¶ 2, (1980).
[6] Sedlak v. Dick, 256 Kan. 779, 802 (1995).
[7] 143 Kan. 1 (1936).
[8] City of Pittsburg v. Robb, 143 Kan. at 4.
[9] 221 Kan. 386 (1977).
[10] State v. Dumler, 221 Kan. at 391.
[11] Id. at 392-93.